IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| DEBRA STEPHENS, | ) | CV. NO. 1:12-CV-659-DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| THE CITY OF AUSTIN, and ART | ) | |
| ACEVEDO, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

## ORDER GRANTING DISCOVERY ON PRETEXT

On June 25, 2014, the Court held a hearing on Objections to the

Magistrate's Report and Recommendation filed by Plaintiff Debra Stephens

("Stephens").  For the reasons that follow, the Court **GRANTS** Stephens' request

to conduct discovery on whether Defendants' proffered reasons for her termination

were pretextual.

## BACKGROUND

This action arises from Stephens' termination from the Austin Police

Department's Forensic Lab ("APD" or the "Lab").  On April 27, 2012, Stephens

filed her Complaint alleging that her employment with APD was terminated as a result of the exercise of her right to free speech under the First Amendment.[1]

On May 1, 2013, Stephens filed a Motion to Compel discovery from Defendants.  (Dkt. # 33.)  Specifically, she requested "instance[s] of an employee of  [the City of Austin] or APD being disciplined, 'written up,' suspended, terminated, demoted, receiving a pay cut, being involuntarily moved to another position or department, receiving a verbal or written warning, or otherwise disciplined since March 2002 to present."  (Id. at 5.)  She also requested that each reported instance should "[i]nclude the behavior being addressed and the date it allegedly took place, the date of the discipline, and the person responsible for the decision to discipline."  (Id.)  She noted that the City objected to such a request because it was overly broad, unreasonably cumulative, and unduly burdensome. (Id.)  Then, she argued in her Motion that the information sought was relevant to show pretext:

> The information sought is relevant to the reason why Plaintiff was
> disciplined.  A public employee claiming violation of freedom of
> speech "must demonstrate that his protected conduct was a substantial
> motivating factor in his discharge.  The employer then has the burden
> of showing a legitimate reason for which it would have discharged the
> employee even in the absence of his protected conduct.  The employee
> can refute that showing by evidence that his employer's ostensible
> explanation for the discharge is pretextual.  Coughlin v. Lee, 946 F.2d

---

[1] Stephens' Complaint also asserted causes of action for race and sex discrimination; however, those claims were later dismissed.  (See Dkt. # 25.)

> 1151, 1157 (5th Cir. 1991); <u>see also</u> <u>Click v. Copeland</u>, 970 F.2d 106,
> 113 (5th Cir. 1992).  Pretext is shown by circumstantial evidence of
> other employees who are similar to Plaintiff that were treated
> differently.  <u>Coughlin</u>, 946 F.2d at 1159.

(<u>Id.</u>)  Plaintiff then continued explaining why the sought-after discovery was

necessary to her case:

> Various reasons have been cited by Defendants as justifying adverse
> employment actions taken against Plaintiff.  Plaintiff needs evidence
> of adverse employment actions taken as to other employees to
> circumstantially prove the pretextual nature of the alleged
> wrongdoing.  <u>Id.</u> ("to rebut Lee's assertion of a permissible reason for
> their discharge, the plaintiffs must prove that the asserted reason was
> no more than pretext.  Pretext can be demonstrated by circumstantial
> evidence").  The information sought will allow Plaintiff to show that
> no employee, other than Plaintiff, has been similarly disciplined for
> the same or similar alleged transgressions, and therefore the reasons
> cited for her termination were merely an[] excuse.

(<u>Id.</u> at 6.)

      The Magistrate Judge denied Plaintiff's request for discovery.  (Dkt.

# 38.)  He held that "First Amendment retaliation claims are governed by the

<u>Mt.Healthy</u> 'mixed-motives' framework and not by the <u>McDonnell Douglas</u>

pretext analysis."  (<u>Id.</u> at 6 (citing <u>Charles v. Grief</u>, 522 F.3d 508, 516 n.28 (5th

Cir. 2008)).)  The Court then recited footnote 28 of <u>Charles</u>, which provided:

> In <u>Mt. Healthy City School District Board of Education v. Doyle</u>, 429
> U.S. 274, 287, 97 S. Ct. 568, 50 L.Ed.2d 417 (1977), the Supreme
> Court held that, once an employee has met his burden of showing that
> his protected conduct was a "substantial factor" or "motivating factor"
> in the employer's adverse employment action, the district court should
> determine whether [the employer] ha[s] shown by a preponderance of

3

the evidence that it would have [taken the same adverse employment
action] even in the absence of the protected conduct." If the employer
is able to make such a showing, then the protected conduct in question
does not amount to a constitutional violation justifying remedial
action.

(Id. (quoting Charles, 522 F.3d at 516 n.28))  Pursuant to Charles, the Magistrate

Judge held that "Under a mixed-motives framework, Stephens is not required to

demonstrate that the employer's explanation for her discharge was pretextual—

instead, she is merely required to show the 'protected conduct was a substantial

factor or motivating factor in the employer's adverse employment action.'"  (Id.)

Because Stephens' letter of termination specifically referenced her emails, which

contained the speech at issue, as a reason for her termination, the Magistrate Judge

concluded that evidence of pretext is irrelevant.  The Magistrate Judge then denied

Plaintiff's Motion to Compel Defendant's to produce evidence of pretext.  (Id.)

On December 20, 2013, Defendants filed a Motion for Summary

Judgment.  (Dkt. # 55.)  In addition to arguing that Stephens failed to state a prima

facie case for First Amendment retaliation, Defendants argued that they were not

liable because they would have terminated Stephens' absent the protected conduct.

(Id. at 34 (citing Mt. Healthy, 429 U.S. at 287).)

On March 31, 2014, the Magistrate Judge issued a Report and

Recommendation on Defendants' Motion for Summary Judgment.  (Dkt. # 69.)

The Magistrate Judge recommended that Defendants' Motion be granted for two reasons.

First, he concluded that Defendants were entitled to summary judgment because Stephens failed to state a prima facie case for First Amendment retaliation.  He began his analysis by setting out the relevant four factors to establish a claim for employment retaliation related to speech: (1) an adverse employment action, (2) speech on a matter of public concern, (3) a causal connection between the speech and the adverse employment action, and (4) the plaintiff-employee's interest in the speech outweighs the government-employer's interest in the efficient provision of public services.  (Id. at 17.)  He concluded that Stephens' termination qualified as an adverse employment action, the Gallegos and ASCLD letters were the only forms of protected speech, there was a causal connection between those letters and Stephens' termination, but that Defendants' interest in maintaining an efficient workplace outweighed Stephens' few instances of protected speech.  (Id. at 32.)  Because Stephens failed to meet the fourth element for her First Amendment retaliation claim, the Magistrate Judge held that Plaintiff failed to state a prima facie case and Defendants should be granted summary judgment on that basis.  (Id.)

Second, he found that despite Stephens' failure to demonstrate a prima facie case, Defendants were still entitled to summary judgment because they

would have terminated Stephens' employment irrespective of her protected speech.

(Id. at 32–25.)  The Magistrate Judge described the defendant's burden after a

plaintiff states a prima facie case for First Amendment retaliation:

> In Mt. Healthy, the Supreme Court held, once an employee has met
> his burden of showing his protected conduct was a "substantial factor"
> or "motivating factor" in the employer's adverse employment action,
> the district court should "determine whether [the employer] ha[s]
> shown by a preponderance of the evidence that it would have reached
> the same decision as to [the adverse employment action] even
> in the absence of the protected conduct." Mt. Healthy City School
> Dist. Bd. of Educ. v. Doyle, 429 U.S. 274, 287, 97 S. Ct. 568, 576
> (1977).  If the employer is able to make such a showing, then the
> protected conduct in question does not amount to a constitutional
> violation justifying remedial action.  Oscar Renda Contracting, Inc. v.
> City of Lubbock, 577 F.3d 264, 271 (5th Cir. 2009).

(Id.)  "However," the Magistrate Judge noted, "an employee may still refute that

showing by presenting evidence that his employer's explanation for the adverse

employment action is merely pretextual."  (Id. (citing Haverda v. Hays Cnty., 723

F.3d 586, 595 (5th Cir. 2013)).)

After reciting the standard, the Magistrate Judge found that

Defendants set forth ample evidence that Stephens would have been terminated

absent her protected speech given her numerous job performance issues.  (Id. at

32–35.)  In fact, the disciplinary process leading to the termination of her

employment began several months before Stephens engaged in the protected

speech.  (Id.)  The Magistrate Judge concluded that Stephens failed to rebut

Defendants' evidence that they would have terminated Stephens' employment even in the absence of her protected speech.  (Id.)  Most importantly, he commented in a footnote:

> It is worth noting that Stephens does not point to any other APD employee with a similar disciplinary and work record whose employment was not terminated.  See Haverda, 723 F.3d at 597 (plaintiff's evidence that none of the other jail employees equally responsible for poor condition of jail were demoted or terminated created fact issue as to whether he would have suffered adverse employment action in absence of protected speech).  See also Jordan, 516 F.3d at 301 ("However plausible, even compelling, the proffered justifications for firing [the plaintiff] sound in isolation, the evidence that others had engaged in conduct similar to [the plaintiff's] without being disciplined is sufficient for a reasonable jury to conclude that [the employer] would not have taken the same action in the absence of the protected conduct").

(Id. at 33 n.6.)  In other words, the Magistrate Judge noted that Stephens failed to produce any evidence that Defendants' proffered reasons for her termination were pretextual—specifically pointing to her lack of evidence of any other employee with similar discipline and work record who was not terminated.

On April 14, 2014, Stephens timely filed her Objections to the Magistrate Judge's Report and Recommendation.  ("Obj.," Dkt. # 70.)  Stephens highlighted the inconsistency between the Magistrate Judge denying her Motion to Compel evidence of pretext and his finding in his Report that Stephens did not produce any evidence of pretext.  (Id. at 6–7.)  She requested that the Court continue the Motion for Summary Judgment and give her an opportunity to

7

conduct further discovery regarding (1) instances where an employee of the City or APD was disciplined, written up, suspended, terminated, demoted, docked pay, involuntarily moved, received a written or verbal warning, or otherwise disciplined since March 2002 and (2) all corrective action reports generated by the APD Crime Lab since March 2002.  (Id. at 6.)

At the June 25, 2014 hearing on Stephens' Objections, the parties acknowledged that when the Magistrate Judge issued his ruling on Stephens' Motion to Compel, Charles dictated that pretext was not a consideration in a First Amendment retaliation case; however, after the Magistrate Judge's ruling on the Motion to Compel, but before he issued his ruling on Defendants' Motion for Summary Judgment, Haverda held that "[a]n employee can, however, refute that showing by presenting evidence that 'his employer's ostensible explanation for the discharge is merely pretextual.'"  723 F.3d at 592 (quoting Coughlin, 946 F.2d at 1157).

## DISCUSSION

I.   Ability to Obtain Discovery on Pretext

At issue is whether Stephens is entitled to discovery on the subject of pretext.  Essentially, this Court must determine whether a First Amendment retaliation claim allows a plaintiff to proffer evidence that the defendant's reason for the adverse employment action was pretextual.

As noted above, in Haverda, the Fifth Circuit recently clarified the

relevant First Amendment retaliation standard:

> To prove a claim of First Amendment retaliation, a plaintiff must
> establish that "(1) [it] suffered an 'adverse employment decision'; (2)
> [its] speech involved 'a matter of public concern'; (3) [its] 'interest in
> commenting on matters of public concern ... outweighs the
> [d]efendant's interest in promoting efficiency'; and (4) [its] speech
> motivated the adverse employment decision." Beattie v. Madison
> Cnty. Sch. Dist., 254 F.3d 595, 601 (5th Cir. 2001) (quoting Harris v.
> Victoria Indep. Sch. Dist., 168 F.3d 216, 220 (5th Cir. 1999)).  Once a
> plaintiff has met his burden of showing that his protected speech was
> a substantial or motivating factor in the defendant's adverse
> employment decision, a defendant may still avoid liability by
> showing, by a preponderance of the evidence, that it would have taken
> the same adverse employment action even in the absence of the
> protected speech.  Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,
> 429 U.S. 274, 287 (1977).  An employee can, however, refute that
> showing by presenting evidence that "his employer's ostensible
> explanation for the discharge is merely pretextual."  Coughlin v. Lee,
> 946 F.2d 1152, 1157 (5th Cir. 1991).

Id. (emphasis added).  There, Haverda was the Captain of Corrections at the Hays

County Correctional Facility since 2004 and claimed that the new sheriff elected in

2010, Gary Cutler, demoted him to a corrections officer because he spoke out in

opposition to Cutler during the election.  Id. at 589–90.  After finding that Haverda

had stated a prima facie case for First Amendment retaliation, the Court turned to

the defendants' explanation for demoting Haverda.  Id. at 594.  The Fifth Circuit

again reiterated the relevant standard:

> Pursuant to the Mt. Healthy doctrine, once Haverda shows that his
> protected speech was a motivating factor in his demotion, Appellees

9

may still avoid liability by showing that they would have taken the
same adverse employment action even in the absence of the protected
speech.  Mt. Healthy, 429 U.S. at 287.  However, an employee may
still refute that showing by presenting evidence that his employer's
explanation for the adverse employment action is merely pretextual.
Coughlin v. Lee, 946 F.2d 1152, 1157 (5th Cir. 1991).

Id. at 595 (emphasis added).  The court then discussed the defendants' proffered

non-discriminatory reasons for demoting Haverda, including the "deplorable

condition" of the jail, Haverda's lack of motivation and leadership ability, his

slovenly appearance and his failure to complete a project to paint a trailer.  Id.

After reciting the defendants' reasons, the court turned to Haverda's evidence of

pretext to show that the defendants' would not have demoted him in the absence of

the protected speech:

> (1) the other two Jail Command Staff members, "equally responsible"
> for the Jail's condition by Chief Deputy Page's own admission, were
> not demoted or terminated; (2) none of the Jail Command Staff
> members, including Haverda, were terminated after the sixty-day
> suspended terminations; (3) testimony of Major Robinson that he
> would not have demoted Haverda, that he did not know why Haverda
> was demoted and others were not, and that he was surprised Haverda
> was demoted; (4) testimony of Major Robinson that he did not recall
> seeing Haverda sitting in the break room for hours; (5) testimony of
> Major Robinson that Haverda's appearance did not affect his work
> performance; (6) Haverda's own testimony providing an alternative
> and excusable explanation for failing to complete the trailer project;
> (7) the demotion memorandum, which did not identify any specific
> performance issues following Haverda's suspended termination; (8)
> the transcript of the secretly recorded meeting, which demonstrates
> that during the meeting Sheriff Cutler focused on performance
> problems prior to Haverda's suspended termination; and (9) a
> documented history of positive performance reviews.

10

<u>Id.</u>

After reciting the defendants' reasons for the demotion and

Haverda's evidence of pretext, the court went to great length to explain how

a lower court should analyze evidence of defendant's reasons and a

plaintiff's pretext evidence:

> Courts applying the <u>Mt. Healthy</u> doctrine in summary disposition
> analyses have held that if a plaintiff brings forth evidence of pretext,
> the determination whether the employer's stated reasons are pretextual
> is a fact issue reserved for the jury.  <u>See</u> <u>Click v. Copeland</u>, 970 F.2d
> 106, 113–14 (5th Cir. 1992)  (finding that evidence of motivation for
> adverse employment action, along with plaintiff's evidence supporting
> a contrary inference, is "fodder for the jury"); <u>Brawner v. City of
> Richardson, Tex.</u>, 855 F.2d 187, 193 (5th Cir. 1988) (holding, after
> considering the plaintiff's evidence of pretext, that the determination
> whether the plaintiff's speech was the motivating factor in his
> discharge turns on a genuine issue of material fact).

<u>Id.</u> at 595–96.  In fact, the court noted, the only time when a jury determination is

inappropriate is where a plaintiff has not controverted the defendant's reasons by

tendering evidence of pretext.  <u>Id.</u> at 596 (citing <u>Pierce v. Tex. Dept. of Criminal

Justice, Institutional Div.</u>, 37 F.3d 1146, 1151 (5th Cir. 1994) (holding that the

plaintiff did not present evidence of retaliation and, therefore, the plaintiff failed to

allege facts that would allow a rational jury to conclude that the employer's

reasons for termination were pretextual); <u>see also</u> <u>Beattie</u>, 254 F.3d at 604 (finding

that the plaintiff had not offered evidence to rebut the employer's evidence that it

11

would have terminated the plaintiff in the absence of the protected speech and, therefore, summary judgment was proper)).

   Applying the aforementioned analysis, the court concluded that Haverda set forth sufficient evidence of pretext to create a fact issue regarding whether the defendants had presented sufficient evidence that they would have demoted Haverda in the absence of his protected speech.  Id. at 597.  Thus, as Haverda makes clear, evidence of pretext is a relevant consideration in a First Amendment retaliation case to rebut a defendant's evidence that they would have terminated the employee absent the protected speech.

   Haverda's assessment of a plaintiff's pretext evidence finds good company in several sister circuits as well.  In Allen v. Iranon, the Ninth Circuit explained how evidence of pretext fits into a Mt. Healthy analysis:

> The fact that the district court discussed pretext in its findings does not mean that it strayed from a proper application of Mt. Healthy. Evidence of pretext has a place in the Mt. Healthy analysis.  Courts determining whether a plaintiff has met his burden under Mt. Healthy often look to evidence that the employer's proffered reasons for the challenged decision were pretextual.  See, e.g., Soranno's Gasco, Inc., 874 F.2d at 1315–16; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 147 (2000) (in a discrimination case, "[p]roof that the defendant's explanation is unworthy of credence is simply one form of circumstantial evidence that is probative of [an impermissible motive], and it may be quite persuasive.").  The court's reference to pretext, therefore, was consistent with a Mt. Healthy analysis.

283 F.3d 1070, 1074–75 (9th Cir. 2002).  Similarly, in <u>Valentino v. Village of South Chicago Heights</u>, the Seventh Circuit held that after the defendant carries its burden of demonstrating that it would have taken the same action in the absence of the protected speech, "the plaintiff may still reach trial by producing sufficient evidence to allow a reasonable fact finder to determine that the employer's reasons were merely a pretext for firing the employee, at least in part, for exercising her First Amendment rights."  575 F.3d 664, 670 (7th Cir. 2009).  Likewise, in <u>Pierce v. Cotiuit Fire Dist.</u>, the First Circuit held that after the employer proffers a "legitimately nonretaliatory reason for the adverse action, "[t]he burden then shifts back to the employee to 'adduce some significantly probative evidence both that the proffered reason is pretextual and that a retaliatory animus sparked his dismissal.'"  741 F.3d 295 (1st Cir. 2014) (quoting <u>Higgins v. New Balance Athletic Shoe, Inc.</u>, 194 F.3d 252, 262 (1st Cir 1999)).

There is at least one circuit court that has declined to factor pretext evidence into First Amendment retaliation claims.  <u>See</u> <u>Deep v. Coin</u>, 453 F. App'x 49, 55 (2d Cir. 2011) ("[T]he defendant has the opportunity to demonstrate by a preponderance of the evidence that it would have undertaken the same adverse employment action 'even in the absence of the protected conduct'. . . . Pretext forms no part of this analysis.").

However, the debate regarding whether pretext should or should not factor into a First Amendment retaliation analysis is a rather academic exercise because this Court, sitting in the Western District of Texas, is obligated to follow binding Fifth Circuit precedent.  See Campbell v. Sonat Offshore Drilling, Inc., 979 F.2d 1115, 1121 n.8 (5th Cir.1992) ("It has long been established that a legally indistinguishable decision of [the Fifth Circuit] must be followed by . . . district courts unless overruled en banc or by the United States Supreme Court.").  And Haverda, in no uncertain terms, endorsed tendering evidence of pretext to rebut a showing of legitimate, nonretaliatory reasons.  See Haverda, 723 F.3d at 595.

As a result of Haverda's directive, Stephens is permitted to seek discovery on whether Defendants' nonretaliatory reasons were pretextual.

II.   Scope of Pretext Discovery

Stephens previously requested evidence identifying "instances of an employee of [the City of Austin] or APD being disciplined, 'written up,' suspended, terminated, demoted, receiving a pay cut, being involuntarily moved to another position or department, receiving a verbal or written warning, or otherwise disciplined since March 2002 to present."  (Dkt. # 33 at 5.)   However, "[d]iscovery does have ultimate and necessary boundaries."  Sw. Hide Co. v. Goldston, 127 F.R.D. 481, 483 (N.D. Tex. 1989).  While Stephens is entitled to

14

discovery on whether Defendants' proffered reasons for her termination were pretextual, her previous discovery request is too broad in scope.

First, Stephens' attempt to seek discovery on every instance of discipline from the City of Austin (i.e., city employees generally) is unnecessary and overbroad. Although Stephens sued the City of Austin and the City of Austin is ultimately liable should Stephens recover, it was Art Acevedo, the Austin Police Chief, who terminated Stephens' employment allegedly based on Stephens' instances protected speech. There is no allegation here that other members of City management played any part in the action taken against Stephens. C.f. Saket v. American Airlines, Inc., No. 02 CV 3453, 2003 WL 685385, at *3 (N.D. Ill. Feb. 28, 2003) (concluding that discovery designed to uncover discrimination complaints outside plaintiff's work group and supervisors was overly broad); see also Balderston v. Fairbanks Morse Engine Div. of Coltec Inds., 328 F.3d 309, 320 (7th Cir. 2003) (finding that the district court did not abuse discretion in limiting discovery in discrimination claim "to the relevant corporate department [and] similarly situated employees").

Moreover, Defendants' non-retaliatory reasons (that Stephens seeks to rebut with pretext evidence) almost exclusively pertain to Stephens' employment with the Austin Police Department—not the City of Austin. (See Dkt. # 62, Ex. 6 (describing reasons for Stephens' employment to include disseminating forensic

15

test results absent administrative approval and failing to secure evidence).)  It would make little sense to require Defendants to tender evidence regarding instances where City of Austin employees were disciplined for conduct completely unrelated to the conduct Stephens was terminated (at least in part) for.  As such, Stephens is only entitled to seek discovery regarding instances of an employee from the Austin Police Department (including the Austin Police Department Crime Lab) being disciplined, written up, suspended, terminated, demoted, receiving a pay cut, being involuntarily moved to another position or department, receiving a verbal or written warning, or otherwise disciplined.

Second, the ten-year timeframe that Stephens' discovery request seeks is overly broad as well.  In responding to Stephens' discovery request, Defendants objected to the timeframe proposed by Stephens.  (See Dkt. # 33 at 6.)  The Court agrees that ten years is a rather large timespan.  Instead, Stephens can seek discovery on instances of an employee from the Austin Police Department (including the Austin Police Department Crime Lab) being disciplined, written up, suspended, terminated, demoted, receiving a pay cut, being involuntarily moved to another position or department, receiving a verbal or written warning, or otherwise disciplined within the past seven years.

CONCLUSION

For the foregoing reasons, the Court **GRANTS** Stephens' request to conduct discovery on whether Defendants' proffered reasons for her termination were pretextual.  The Court **ORDERS** Defendants to produce evidence identifying instances where an employee of the Austin Police Department (including the Austin Police Department Crime Lab) was disciplined, written up, suspended, terminated, demoted, docked pay, involuntarily moved, received a written or verbal warning, or otherwise disciplined since March 2005.  Defendants shall produce such materials within **30 days** from the issuance of this Order.  After the expiration of the thirty-day period, Stephens shall have **10 days** to file supplemental briefing to present evidence that Defendants' proffered explanation for Stephens' termination was pretextual.  Defendants will have **5 days** after Stephens' supplemental briefing on pretext to file a response.

**IT IS SO ORDERED.**

**DATED**: Austin, Texas, July 18, 2014.

_____
David Alan Ezra
Senior United States Distict Judge

17